UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

MARY MCDERMOTT,

                      Plaintiff,                **DECISION AND ORDER**

      -against-                             22-cv-3051 (AEK)

ARCHCARE COMMUNITY SERVICES, INC.
d/b/a ARCHCARE,

                      Defendant.
-----------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[1]**

      Plaintiff Mary McDermott commenced this action on April 13, 2022, ECF No. 1, and filed an amended complaint on September 27, 2022, asserting claims against Defendant ArchCare Community Services, Inc. d/b/a ArchCare, for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") based on the alleged failure to pay overtime wages and provide statutorily required wage statements, ECF No. 16.[2]  Before the Court is the parties' application for approval of a proposed settlement agreement in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  ECF No. 44 ("*Cheeks* App.").  For the reasons that follow, the parties' application for approval of the proposed settlement agreement is DENIED WITHOUT PREJUDICE.

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 43.

[2] In the amended complaint, Plaintiff also asserted a claim for retaliation under the Family Medical Leave Act, but the parties' settlement is focused on Plaintiff's wage claims.  *See* ECF No. 44 at 2 n.1.

# DISCUSSION

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020). Thus, a district court in this Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable. *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021). When reviewing a proposed settlement agreement in an FLSA case, district courts consider the "totality of circumstances," *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335-36). In addition, the following factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted). "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Xiao v. Grand Sichuan Int'l St. Marks,*

*Inc.*, Nos. 14-cv-9063, 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

Having reviewed the parties' submission in support of the proposed settlement, having presided over the settlement conference in this matter at which the parties reached agreement to resolve the case—a process that involved extensive discussion about the merits of the case with the parties—and having considered the totality of the circumstances, the Court finds that the parties' settlement agreement, with two exceptions set forth below, is fair and reasonable.

All five *Wolinsky* factors weigh in favor of approval. First, the proposed settlement agreement provides for a total settlement payment of $85,000, with $56,375.17 payable to Plaintiff and $28,624.83 payable to Plaintiff's counsel as attorneys' fees and costs. Plaintiff alleged that she regularly worked 7.5 hours per week of overtime, and that she was paid an annual salary of $90,000, which amounted to an hourly rate of $52.46 and an effective overtime rate of $78.69. *Cheeks* App. at 2. Taking into account reductions for vacation and medical leave days—*i.e.*, days when she would not have worked overtime—Plaintiff contends that during her three-year employment with Defendant, Defendant failed to pay her approximately $86,000 in overtime wages. *Id.* Based on this figure, Plaintiff's maximum potential recovery at trial— adding liquidated damages and statutory penalties—would have been $182,000.[3] *See id.* The amount payable to Plaintiff thus constitutes approximately 31 percent of the total amount to which Plaintiff claims that she would have been entitled had she prevailed at trial, and approximately 66 percent of her alleged wage losses. These percentages of recovery are in line with recovery amounts in other FLSA cases in this District where courts have approved

---

[3] In the *Cheeks* Application, Plaintiff puts this figure at $185,000, but $182,000— reflecting the $86,000 in allegedly unpaid overtime, doubled to account for liquidated damages, plus $10,000 in statutory penalties—is a more accurate calculation.

3

settlement terms.  *See, e.g.*, *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement where plaintiff's recovery was "approximately 18% of Plaintiff's total alleged damages and approximately 39% of his total alleged minimum wage and overtime owed," and noting that "[c]ourts in this District routinely award settlement amounts within this range.") (collecting cases).

Second, the settlement will enable the parties to avoid additional expenses and burdens associated with establishing their claims and defenses.  While the parties had conducted discovery prior to reaching this settlement, the parties had not yet completed depositions, conducted expert discovery, or engaged in motion practice, all of which likely would have occurred before trial here.

Third, both parties would have faced significant litigation risks if this case had proceeded to trial.  Defendant asserts that Plaintiff, who is a registered nurse, falls within the "learned professional" exemption under the FLSA, which would preclude any recovery for alleged unpaid overtime.  *Cheeks* App. at 2.  The parties acknowledge, however, that given the circumstances of Plaintiff's employment and her job responsibilities, the applicability of the "learned professional" exemption is fact dependent, and would have to be determined at trial.  *See id.*  It is certainly possible that Plaintiff could recover nothing at all if she were to proceed to trial; yet it is also possible that this central defense may not have been successful, leaving Defendant open to substantial exposure.  Because of the anticipated risks and costs involved in pursuing this matter through the end of discovery, motion practice, and trial, settlement is an effective means of resolving the litigation for both parties.

Fourth, the Court presided over the settlement conference and therefore observed firsthand that the proposed settlement is the product of arm's-length bargaining between experienced counsel.

Fifth, the Court has no reason to believe that the proposed settlement is the product of fraud or collusion.

Moreover, none of the factors set forth in *Wolinsky* that weigh against approving a settlement exist in this case. This is a case involving an individual Plaintiff—the Court is not aware of other employees who are similarly situated to Plaintiff, and Plaintiff will be the only employee affected by the settlement and dismissal of the lawsuit. Given that the employment relationship between Plaintiff and Defendant has ended, there is no likelihood that the circumstances that gave rise to this lawsuit will recur. The Court is not aware of a history of FLSA non-compliance by this employer, and the complaint in this matter does not appear to raise novel factual or legal issues that would further the development of law in this area.

The proposed settlement agreement, *Cheeks* App. Ex. A ("Settlement Agreement"), does not contain confidentiality or non-disparagement provisions that would preclude court approval. *See Cortes v. New Creators, Inc.*, No. 15-cv-5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016). That said, the proposed Settlement Agreement, and the parties' application for *Cheeks* approval, are problematic in two respects.

*First*, the proposed Settlement Agreement contains both release provisions—as well as provisions relating to other proceedings that effectively serve as a release—that preclude court approval of the settlement at the present time. More specifically, the proposed Settlement Agreement contains a broad, unilateral general release in paragraph 3, which provides that Plaintiff

5

(b) . . . expressly waives her right to . . . bring or pursue any lawsuit, grievance, charge, arbitration or administrative proceeding, upon *any claim* [Plaintiff] may have or may have had against ArchCare, its present and former employees, officials, agents, attorneys, insurers, legal representatives, parents, successors, assigns, and any facility or program owned, operated, managed by or affiliated with ArchCare (collectively the "ArchCare Releasees"), *regarding any matter* arising on or before the date [Plaintiff] signs this Agreement, whether or not such claim(s) has been asserted and whether or not such claim(s) is known to [Plaintiff] at the time she signs this Agreement. [Plaintiff] hereby irrevocably and unconditionally releases and forever discharges the ArchCare Releasees of and from any action, charge, causes of action, suit, obligation, promise, stipulation, damage, debt, complaint, liability, claim, grievance, arbitration, cost, loss, right, expense and/or any controversy in law or equity *of any nature whatsoever* asserted or unasserted, known or unknown, suspected or unsuspected, which [Plaintiff] ever had, now has or hereinafter may have against any of the ArchCare Releasees *regarding any matter* arising on or before the date [Plaintiff] signs this Agreement. Said waiver shall include, *but shall not be limited to*, any and all claims, grievances, proceedings, demands for arbitration or causes of action, known or unknown, arising out of, or in any way connected with or relating to:

i. [Plaintiff's] employment with ArchCare, the end of [Plaintiff's] employment with ArchCare, any wages or other compensation allegedly owed or otherwise due to [Plaintiff] by ArchCare, or any and all other matters alleged in the Civil Action;

ii. any interaction with and/or any other act or omission of any of the ArchCare Releasees, *including but not limited to*, claims for wages, bonuses, vacation, attorneys' fees, reimbursement for any unpaid suspension, breach of implied or express contract, impairment of economic opportunity, intentional or negligent infliction of emotional distress, prima facie tort, defamation, negligent termination, malicious prosecution, wrongful discharge, retaliatory discharge or layoff, discharge in violation of any applicable whistleblower statute or claim of any other tort, whether intentional or negligent;

iii. any claim or cause of action known or unknown, *including but not limited to* any claims under the Fair Labor Standards Act; the Family Medical Leave Act; the Americans With Disabilities Act; the New York State Human Rights Law; the New York Labor Law; the Wage Theft Prevention Act; the New York City Human Rights Law; the New York City Administrative Code; the United States Constitution; the New York State Constitution; or any

> other federal, state, city, county or local municipal statute, law, rule, regulation, or ordinance of any kind.
>
> . . .
>
> (d) . . . [Plaintiff] understands and agrees that she will not seek anything further, whether monetary or otherwise, from the ArchCare Releasees *relating to anything that occurred* at any time on or before [Plaintiff] executes this Agreement. . . .

Settlement Agreement ¶¶ 3(b)(i)-(iii), (d) (emphases added).

Paragraph 4 of the proposed Settlement Agreement entitled, "Other Proceedings," also includes language amounting to a broad, unilateral release of claims by Plaintiff. That section provides that

> (b) [Plaintiff] acknowledges and agrees that *no claim, grievance or demand for arbitration, action, lawsuit, charge or proceeding* with any federal, state or local court or agency (excluding the EEOC, NYSDHR and NYCCHR), will be brought or filed by [Plaintiff], or any representative of [Plaintiff] on her behalf, against any of the ArchCare Releasees or *in any way arising from or relating to* [Plaintiff's] employment with ArchCare and/or any other matter released by [Plaintiff] in Paragraph 3 of this Agreement that occurred at any time on or before the date [Plaintiff] executes this Agreement.
>
> (c) In the event [Plaintiff], or a representative on her behalf, files a charge with the EEOC, NYSDHR or NYCCHR, or in the event that any enforcement or investigatory action against any of the ArchCare Releasees is undertaken by the EEOC, NYSDHR, NYCCHR, or any other governmental agency (including but not limited to the United States Department of Labor or New York State Department of Labor), [Plaintiff] shall not be prevented or precluded by this Agreement from fully cooperating with such agency(ies) or participating fully in any such governmental process. [Plaintiff] expressly agrees, however, that *by signing this Agreement, she is irrevocably waiving and forfeiting any right to recover any monetary or other individual (i.e., equitable) relief* as the result of any such proceeding or any subsequent legal action brought by such governmental agency.

Settlement Agreement ¶¶ 4(b)-(c) (emphases added).

Courts have repeatedly cautioned that release language in settlements submitted for approval pursuant to *Cheeks* should be limited to the wage-and-hour claims asserted in the action

and related claims that could have been asserted. *See, e.g., Perez v. Pearl River Pastry, LLC*, No. 21-cv-1259 (AEK), 2022 WL 14757824, at *2 (S.D.N.Y. Oct. 25, 2022); *Nash v. Countrywide Carting, Ltd.*, No. 19-cv-9138 (AEK); 2022 WL 602998, at *3 (S.D.N.Y. Mar. 1, 2022); *Illescas v. Four Green Fields LLC*, No. 20-cv-9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021). In contrast, the above-referenced language in the proposed Settlement Agreement is "far too sweeping to be 'fair and reasonable'" as it would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Lopez v. Nights of Cabiria*, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015).

At the same time, courts have approved broad general releases in settlement agreements resolving FLSA claims when those releases were negotiated by competent counsel for both sides and involve former employees who have no ongoing relationship with the employer—both factors that are present here—and, critically, were *mutual in all respects*. *See Souza v. 65 St. Marks Bistro*, No. 15-cv-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015); *Khan v. Young Adult Institute, Inc.*, No. 18-cv-2824 (HBP), 2018 WL 6250658, at *2 (S.D.N.Y. Nov. 29, 2018); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016); *but see, e.g.*, *Bukhari v. Senior*, No. 16-cv-9249 (PAE) (BCM), 2018 WL 559153, at *1-2 (S.D.N.Y. Jan. 23, 2018) (the court would not approve a settlement agreement including a broad, mutual general release unless the parties revised the agreement to include a narrower release or provided "a concrete and persuasive explanation of the practical benefit" to the plaintiff of broadly releasing all claims against the defendants). Indeed, this Court in particular has approved broad general releases when those releases were mutual. *See Swain v. Jodlowski,* No. 20-cv-617, 2021 WL 2313478, at *2 (S.D.N.Y. May 7,

2021), *subsequent determinations* 2021 WL 6101017, at *2 (S.D.N.Y. Nov. 5, 2021) and Dkt. No. 20-cv-617 at ECF No. 43 (S.D.N.Y. Nov. 12, 2021).

Accordingly, the Court cannot approve the proposed Settlement Agreement unless *either* (1) the release provisions in paragraph 3 and the effective release provisions in paragraph 4 are amended so that the release is limited to the wage-and-hour claims asserted in this action and related claims that could have been asserted in this action, *or* (2) the release provisions in paragraph 3 and the effective release provisions in paragraph 4 are amended to include a general release that is mutual in all respects.

***Second***, with respect to attorneys' fees and costs, the parties' application does not include enough information for the Court to approve the award of attorneys' fees. The proposed settlement provides for Plaintiff's counsel to receive $28,187.58 in fees, which is approximately one-third of the total settlement amount net of costs. *Cheeks* App. at 3; *see Beckert v. Ronirubinov*, No. 15-cv-1951 (PAE), 2015 WL 8773460, at *3 (S.D.N.Y. Dec. 14, 2015) ("[W]hen awarding fees on a percentage-of-the-fund basis, the appropriate denominator is the total settlement *net* of costs.") (emphasis in original). The proposed settlement also contemplates payment of $437.25 in costs. *Cheeks* App. at 3.

Regarding the request for $437.25 in costs, Plaintiff's counsel has provided documentation supporting the award of these costs, which consist of the $402 case filing fee and $35.25 spent to obtain medical records. *See id.* Ex. B; *see also* Docket Sheet, Entry for ECF No. 1. Counsel in FLSA cases may be awarded reasonable out-of-pocket expenses that are properly substantiated. *See, e.g., Cortes*, 2016 WL 3455383, at *6 ("Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts."). The Court finds that the request for costs is reasonable, as the

costs are sufficiently substantiated and "of the type commonly reimbursed by courts in this District." *Id.*

Regarding the request for $28,187.58 in attorneys' fees, "[c]ourts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." *Santos*, 2021 WL 431451, at *2 (quotation marks and brackets omitted). "However, even when the proposed fees do not exceed one third of the total settlement amount, courts in this [C]ircuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Id.* (quotation marks omitted). Here, Plaintiff's counsel has failed to submit time records and hourly rate information to substantiate the fee application. *See Fisher*, 948 F.3d at 600 ("The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs."). The Court is therefore unable to engage in a cross check of the reasonableness of the fee award. Accordingly, the Court cannot approve this aspect of the proposed Settlement Agreement until Plaintiff's counsel provides proper substantiation of the requested attorneys' fees.

## CONCLUSION

For the reasons set forth above, the parties' application for *Cheeks* approval, ECF No. 44, is DENIED WITHOUT PREJUDICE. The parties are hereby directed to submit a proposed settlement agreement that is revised in accordance with this Decision and Order, and Plaintiff's counsel is directed to provide the additional information needed for the Court to assess the reasonableness of attorneys' fee award. These submissions are to be filed via ECF by no later than December 13, 2023.

Dated: November 28, 2023
      White Plains, New York        SO ORDERED.

_____
ANDREW E. KRAUSE
United States Magistrate Judge